Kinkade, J.
 

 This case presents the question whether the owner and holder of a. certificate of deposit, issued by a state bank, in the regular course of business, and for full value received by the bank, may be given priority over the general creditors of the bank, when the bank becomes insolvent and its assets pass into the hands of the state superintendent of banks for liquidation.
 

 The state contends in this case that the status of the defendant in error is precisely the same, in legal effect, as that of the holder of an unpresented, unaccepted, and unpaid check drawn against the funds of an insolvent bank, prior to the passing of such funds into the hands of the state, by a depositor of the bank whose credit balance in the bank was then sufficient to cover such check, had it been presented' for payment.
 

 The defendant in error insists that the facts attending the issue of the certificates of deposit in question, their transfer to the defendant in error and their return in due course to the bank of issue for payment, their payment and cancellation as paid on the books of that bank, the payment being made by the issue by that bank of a draft against the credit balance of that bank in another bank, ample to meet such draft, and the presentation of such draft to the bank on which it was drawn for payment, prior to any notice to that bank or to the owner and holder of the draft that the funds of the insolvent bank had passed into the hands of the state, were, in legal ef
 
 *144
 
 feet, such presentment for payment 'and such acceptance of the draft as gave to the defendant in error a preference over the general creditors of the insolvent bank.
 

 The preference was duly demanded and refused, whereupon defendant in error brought an action in the Court of Common Pleas to enforce the preference. That court denied the preference. The Court of Appeals, on appeal, sustained the preference. The state prosecutes error here.
 

 Defendant in error moves this court to dismiss this error proceeding because no motion for a new trial was filed in the Court of Appeals, and no bill of exceptions was perfected in that court and brought here. The journal entry in the Court of Appeals shows that a motion for new trial was there filed and overruled. No bill of exceptions was in fact perfected. Plaintiff in error insists that no bill of exceptions was necessary, because the state was entitled to a judgment in its favor on the pleadings alone. The journal entry in the Court of Appeals recites that the cause was presented “upon an agreed statement of facts, transcript of the testimony taken in the Common Pleas Court, transcript of the docket and final judgment of the Common Pleas Court and the original papers and pleadings; and, also, certain oral admissions of facts made by the respective parties, through their counsel; and the court, having attentively heard the case and the argument of counsel, and being fully advised in the premises, finds that plaintiff’s claim should be allowed, and is ordered to be allowed as a preferred claim, and that the funds coming into the hands of the superinten
 
 *145
 
 dent of banks are impressed with á trust for the payment of said claim.”
 

 The Court of Appeals remanded the case to the Common Pleas Court for execution. Plaintiff in error here insists that there is no dispute on the facts, and that the state is now willing to have the case decided on the facts as stated in the pleadings filed by the defendant in error.
 

 The motion to dismiss for want of a bill of exceptions is not without merit, in view of the manner in wh'ich the case was submitted to the Appellate Court, as stated in its journal entry, but the case has been fully argued here, and it will be decided oil its merits; the facts not being in dispute.
 

 The insolvent bank, .the State Exchange Bank of Stryker, Williams county, Ohio, later referred to as the Stryker bank, while solvent, and in the usual course of business, and for a full consideration moving to the bank-at the time, issued, on different dates, five certificates of deposit, aggregating a little less than $1,200, to two parties (husband and wife). In due course the' holders of these certificates duly transferred them to the Union Savings Bank of Bryan, Williams county, Ohio, defendant in error, and later referred to as the Union Bank, and deposited therewith certain money, and received from the Unión Bank its certificates of deposit for the aggregate amount of the certificates and cash so passéd into the Union Bank.
 

 The Union Bank, in due course, and without delay, transferred the certificates of deposit of the Stryker bank to its Toledo bank correspondent, taking credit therefor on the books of the Toledo bank. The Toledo bank, in due course, and without delay, trans
 
 *146
 
 ferred the Stryker bank certificates of deposit to a federal reserve bank in Cleveland. The federal reserve bank, in due course, and without delay, .sent the Stryker bank certificates of deposit direct to the Stryker bank for payment. Under the established rules of banking, the Stryker bank had the option to forward the amount in money, or in a draft upon some other solvent bank where the credit balance of the Stryker bank was sufficient to meet the draft. The Stryker bank chose the latter form of payment, and thereupon it marked the certificates themselves as paid, and entered upon its certificate of deposit record the fact that they were paid, and at the same time forwarded to the Cleveland bank, in due course and without delay, a draft of .the Stryker bank payable to the Cleveland bank for the full amount of the certificates drawn upon the Farmers’ National Bank of Bryan, Ohio, later referred to as the Farmers’ Bank. At that time the credit balance of the Stryker bank on the books of the Farmers ’ Bank, as well as its actual balance in.funds there subject to such draft, was 'ample to cover the draft. The Cleveland bank, in due course, and without delay, sent the Stryker bank’s draft to the Farmers’ Bank for payment. This draft reached the Farmers’ Bank in its early morning mail on a given date. The Farmers’ Bank was willing and anxious to pay the draft, and had in its hands ample funds of the Stryker bank available for that purpose, which was evidenced by the credit balance of the Stryker bank on the books of the Farmers’ Bank. This draft having been presented for payment through the mails, instead of by a personal messenger of the Cleveland bank, as it might have been had both banks been in
 
 *147
 
 the same city, would ordinarily have been actually paid by a remittance either in currency or in some form of bank exchange, probably the latter, through the mail, during the course of its business. Later, on the same day, the superintendent of banks notified the Farmers’ Bank that the Stryker bank had been closed for liquidation, and advised the Farmers’ Bank not to honor any paper issued by the Stryker bank. After getting this notice, the Farmers ’ Bank then protested the Stryker bank’s draft for nonpayment, and the issue found its way into the court, and was determined, as stated.
 

 Since the foregoing transaction occurred, the Legislature has enacted Sections 711, 712, and 713, General Code. It is freely conceded by counsel for the state that, if these sections of the General Code were applicable to the case at bar (it is not claimed by the Union Bank that they are), they would, on the facts admitted here, clearly and definitely establish a preference in favor of the Union Bank over the general creditors of the Stryker Bank. It is urged by the state that, had such right of preference existed, without such enactment, there would have been no occasion calling for the enactment of the three sections mentioned. There is force in the argument, hut it may well be said in answer that these sections are the result of a clear recognition on the part of the Legislature that facts such as stated in the case at bar call for relief along the line of preference. It is conceded by counsel on both sides that the decisions are not in harmony on the question presented here. Each claims the weight of authority is on his side.
 

 There was no delay, no sharp practice, and noth
 
 *148
 
 ing unfair in time or method of procedure on the part of any of the banks participating in any feature of the case at bar. The draft in question came in due course to the bank whose duty it was to pay it, and which had the funds on hand with which to pay it, and that bank accepted the draft and intended to pay it. It is difficult, indeed, to assign any sound reason why that presentment for payment and that acceptance for payment were not tantamount, in legal effect, to the actual payment of the draft, thereby making the Farmers’ Bank the holder of that portion of the funds in its hands as trustee for the Cleveland bank.
 

 "We have no difficulty in affirming the action of the Court of Appeals in sustaining the preference arising by reason of the facts admitted in this case.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Allen, Robinson, Jones and Matthias, JJ., concur.